UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| M.S., | : | |
| | : | |
| Plaintiff, | : | Case No. 2:24-cv-04011-ALM-EPD |
| | : | |
| v. | : | Judge Algenon L. Marbley |
| | : | Magistrate Judge Elizabeth P. Deavers |
| G6 HOSPITALITY, LLC, G6 | : | |
| HOSPITALITY FRANCHISING, LLC; | : | |
| CHOICE HOTELS INTERNATIONAL, | : | |
| INC., and WYNDHAM HOTEL | : | |
| & RESORTS, INC., | : | |
| | : | |
| Defendants. | : | |

## OPINION & ORDER

This matter comes before this Court on Defendants Wyndham Hotels & Resorts, Inc. ("WHR" or "Wyndham") and Choice Hotels International, Inc.'s ("Choice") motions to dismiss Plaintiff's Complaint. (ECF Nos. 17, 18). For the reasons set forth below, Defendants' motions (ECF Nos. 17, 18) are **DENIED.**

## I.    BACKGROUND

This case arises under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a) and the Child Abuse Victim's Rights Act ("CAVRA"), 18 U.S.C. § 2255. Plaintiff M.S. alleges that, between approximately October 2012 to May 2013, she was trafficked for sex as a minor at hotel properties in Fresno, California, that were owned and managed by Defendants G6 Hospitality, LLC ("G6"); Choice Hotels International, Inc. ("Choice"); and Wyndham Hotels & Resorts, Inc. ("WHR" or "Wyndham"). (See ECF No. 1 ¶¶ 3, 51, 54, 59). These properties include Choice's Rodeway Inn, located at 6730 N Blackstone Ave, Fresno, CA;

and Wyndham's Super 8 Fresno, located at 1087 N Parkway Dr, Fresno, CA 93728. (*Id.* ¶¶ 61, 70).

Specifically, Plaintiff alleges that she stayed at the Fresno Rodeway Inn by Choice between October 2012 and May 2013, "frequently staying here for months at a time." (*Id.* ¶ 62). She alleges that "there was constant foot traffic in and out of M.S.'s room"; and that hotel staff witnessed "johns" who were "significantly older than M.S. . . . come into the main entrance and to M.S.'s room." (*Id.* ¶¶ 62–63). According to Plaintiff, "[o]n one occasion, M.S. was robbed while waiting for a 'john' and her purse was stolen"; when she ran outside after the perpetrator, she passed front desk staff and "even asked them for security camera recordings of the incident or for the perpetrator's information, but they refused to help her in any way." (*Id.* ¶ 64). Additionally, to make sure "that the police were never called, M.S.'s trafficker paid staff at the Fresno Rodeway Inn to keep quiet." (*Id.* ¶ 65).

As to Wyndham's Super 8 Motel, Plaintiff alleges that she stayed there with her trafficker from October 2012 to May 2013, "frequently staying for days at a time." (*Id.* ¶ 71). She "remembers staying in a room in the corner, where hotel staff would purposely place M.S. and her trafficker." (*Id.* ¶ 77). She further alleges that "there was constant foot traffic in and out of M.S.'s room"; and that hotel staff witnessed "johns" who were "significantly older than M.S. . . . come into the main entrance and to M.S.'s room." (*Id.* ¶ 72). Additionally, "M.S.'s trafficker would even pay the Super 8 Fresno hotel staff twice the daily rate." (*Id.* ¶ 73).

Plaintiff alleges that, at these hotels, she was forced to engage in commercial sex with many men everyday under threats of physical and psychological abuse. (*Id.* ¶¶ 5–6). According to Plaintiff, "M.S.'s trafficker was very violent with her" at both properties and "loud sounds of abuse and M.S.'s screams for help could often be heard from the room as she was beaten every day." (*Id.*

¶¶ 66, 74). Plaintiff further alleges that Defendants profited from her sex trafficking by renting rooms to Plaintiff's traffickers and from Wi-Fi data collected from the rooms. (*Id.* ¶ 149). She also alleges that "to save costs and continually reap millions of dollars in profits, Defendants generally failed to create, adopt, implement, and enforce company-wide policies and procedures regarding suspected incidents of human trafficking at the branded properties." (*Id.* ¶ 42). According to M.S., each stay at the Defendants' motels raised "several consistent red flags," that should have been obvious to staff, "including, but not limited to: Paying for stays in cash; Paying for extended stays on a day-by-day basis; Requesting a room away from other guests; Obvious signs of illegal drug use; Frequent requests for linen changes; Unusually large number of used condoms in the trash; Unusually large number of male visitors asking for M.S. and her trafficker at the front desk; Physical abuse in public spaces; Visible signs of prior and private physical abuse; Unusually large number of male visitors coming in and out of the room; Asking the front desk not to be disturbed; Women wearing clothing inappropriate for the weather; Loud noises of abuse or other emergency audible to staff or other rooms; and Loitering and soliciting on hotel grounds." (*See e.g.*, *id.* ¶¶ 67, 75). According to M.S., hotel staff at Defendants' properties would have recognized "that M.S. was a child[] and saw the signs of her deterioration brought on by the abuse perpetrated by her trafficker, including bruising and physical and verbal abuse occurring in public areas of Defendants' properties as well as signs of malnutrition and poor health." (*Id.* ¶ 58).

Plaintiff now seeks to hold Defendants liable under the TVPRA and CAVRA. On October 2, 2024, Plaintiff filed this action. (ECF No. 1). On December 16, 2025, Wyndham and Choice moved to dismiss Plaintiff's Complaint. (ECF Nos. 17, 18). Plaintiff opposed the motion (ECF No. 25), and Defendants replied (ECF Nos. 28, 30). This matter is now ripe for resolution.

## II.    STANDARD OF REVIEW

A court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F. 3d 950, 958–59 (6th Cir. 2005). When ruling on a Rule 12(b)(6) motion, a court construes the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F. 3d 430, 434 (6th Cir. 2008). If more than one inference may be drawn from an allegation, this Court must resolve the conflict in favor of the plaintiff. *Mayer v. Mylod*, 988 F. 2d 635, 638 (6th Cir. 1993). A court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. The Complaint should be read as a whole, even if a specific alleged fact read in isolation appears meaningless. *Ricchio v. McLean*, 853 F.3d 553, 557 (1st Cir. 2017).

## III.    LAW & ANALYSIS

Wyndham argues that the Complaint fails to state a TVPRA claim for perpetrator liability; beneficiary liability; and vicarious liability. (*See* generally ECF No. 17). Wyndham also contends that Plaintiff's CAVRA claim fails as a matter of law; and that there is no joint and several liability. (*Id.*). Choice makes the same arguments, emphasizing this Court's lack of personal jurisdiction given the insufficiency of Plaintiff's CAVRA claim and further argues that Plaintiff's claims are barred by the statute of limitations. (*See* ECF No. 18).

### A.  Personal Jurisdiction and CAVRA Liability

As a threshold matter, Choice contends that this Court cannot exercise personal jurisdiction over it because, in Defendant's view, Plaintiff has failed to state a claim under CAVRA, which

authorizes a Plaintiff to bring suit in any appropriate United States District Court. *See* § 2255(a). Because Choice is located in Indiana and the properties in question are located in California, Choice asserts that absent a CAVRA claim, this Court has no personal jurisdiction over it and must dismiss the case. (ECF No. 18 at 2–4). To determine whether this Court possesses personal jurisdiction over the Defendant, this Court must first analyze whether Plaintiff has stated a CAVRA claim. *T.D.P. v. Choice Hotels Int'l, Inc.*, 725 F. Supp. 3d 784, 790 (S.D. Ohio 2024).

The Child Abuse Victims Rights Act, 18 U.S.C. § 2255(a) ("CAVRA"), provides:

> Any person who, while a minor, was a victim of a violation of section ... 1591 [among others] ... and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred.

§ 2255(a). At the outset, both Defendants argue that Plaintiff does not adequately plead that she was a minor at the time that she was trafficked through their properties. Not so. Plaintiff alleges that she was "kidnapped by her trafficker when she was just fifteen (15) years old," (ECF No. 1 ¶ 49), that "[f]rom approximately October 2012 to May 2013, while under the coercive control of her trafficker, M.S. was imprisoned as a minor . . ." (*id.* ¶ 54); and that M.S. and "her trafficker" stayed at Choice's Rodeway Inn and Wyndham's Super 8 Motel between October 2012 and May 2013. (*Id.* ¶¶ 67, 76). Plaintiff further alleges that she "was a 'minor' pursuant to 18 U.S.C. § 2255(a) when she was trafficked." (*Id.* ¶ 157).

As this Court observed under similar circumstances, "a complaint 'must be read "as a whole," and all reasonable inferences must be drawn in the plaintiff's favor.'" *T.D.P.*, 725 F. Supp. 3d at 790 (quoting *Stratton v. Portfolio Recovery Assocs.*, *LLC*, 770 F.3d 443, 446 (6th Cir. 2014), *as amended* (Dec. 11, 2014)). Reading the Complaint as a whole, it is reasonable to infer from

Plaintiff's complaint that she was a minor at the time she was trafficked at Defendants' properties. *Id.*

WHR also argues that the plain language of CAVRA requires Defendant itself to have violated § 1591, the portion of the TVPRA that creates criminal liability for those knowingly engaged in or knowingly benefitting from sex trafficking, or other criminal statutes of which Plaintiff alleges she was a victim. (*See* ECF No. 17 at 7 n.2). The analysis, this Court has observed, "begins and ends with the text of the statute." T.D.P., 725 F. Supp. 3d at 791. The text of Section 2255 "does not specify against whom a lawsuit may be brought" and "provides no reason to believe that Congress intended to prohibit plaintiffs from suing beneficiaries of and participants in the many crimes enumerated in § 2255, so long as plaintiffs' claims comport with the traditional requirements of standing—injury in fact, causation, and redressability." *Id.* at 791–92.

Here, Plaintiff has sufficiently alleged that she was injured when she was trafficked in violation of § 1591 as a minor. Defendant's alleged participation in and benefit from a venture it should have known was in violation of the TVPRA, discussed further below, is "surely enough to establish causation for purposes of a standing analysis," and "Plaintiff's harm is one a court can redress through damages." *Id.* Accordingly, this Court concludes that Plaintiff has pleaded sufficient allegations to survive a motion to dismiss on her CAVRA claim.

Because this Court concludes that Plaintiff has stated a CAVRA claim, which authorizes nationwide personal jurisdiction, this Court possesses personal jurisdiction over Defendants.

### B. Statute of Limitations

Choice next argues that that Plaintiff's TVPRA claims are time-barred. Under Section 1595, a plaintiff may maintain; an action under § 1595(a) if "it is commenced not later than . . . 10

years after the cause of action arose" or "10 years after the victim reaches 18 years of age, if the victim was a minor at the time of the alleged offense." 18 U.S.C. § 1595(c)(1).

Choice argues that because "Plaintiff has not adequately alleged minority" during the time she was trafficked between 2012 and 2013, she must abide the "10 years after the cause of action arose" provision and is therefore barred from raising claims based on events occurring prior to October 2, 2014. (ECF No. 18 at 4–5). For the same reasons explained above, however, Plaintiff's allegations are sufficient to state that she was a minor, at least fifteen years old, at the time she was trafficked at Defendants' properties. (*See* ECF No. 1 ¶¶ 49, 54, 67, 76, 157). Because Choice does not raise any other timeliness challenges to Plaintiff's claims aside from the sufficiency of her minority allegations, this Court declines to dismiss Plaintiff's claims on statute-of-limitations grounds.

### C. Direct Civil Liability under the TVPRA

Having concluded that there are no jurisdictional or timeliness impediments to adjudicating this case, and that Plaintiff has stated a claim under § 2255, this Court now considers whether Plaintiff has stated a claim under the civil liability component of the TVPRA, § 1595. This Court has undertaken extensive analysis of the issue of civil liability of hotel defendants in sex trafficking cases under the TVPRA in several cases with many factual similarities to this one. *See T.D.P.*, 725 F. Supp. 3d at 793 (citing cases). The TVPRA has two provisions relevant to this case. First, the TVPRA provides for criminal penalties set forth in 18 U.S.C. § 1591:

    (a) Whoever knowingly—

        (1) in or affecting interstate or foreign commerce, ... recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a). Secondly, and central to Plaintiff's claim, is the standard for civil liability under the TVPRA set forth in 18 U.S.C. § 1595:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).

As a preliminary matter, this Court has held in several cases that § 1595(a) can be a standalone claim, and civil defendants need not have committed the underlying criminal sex trafficking offense under § 1591. *M.A.*, 425 F. Supp. 3d at 964; *H.H.*, 2019 WL 6682152 at *2 (citing Cong. Research Serv., R40190, The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (P.L. 110-457): Criminal Law Provisions, at 16 (Jan. 29, 2009) (the amendments to the TVPRA "create[ ] civil liability both for those who face criminal liability for their profiteering and those who do not.")).  This Court likewise finds that Plaintiff's allegations that she is a victim of trafficking under § 1591 is enough to plead sufficiently that she is "a victim of this chapter" pursuant to § 1595(a) in order to survive a motion to dismiss. (*See e.g.*, ECF No. 1 ¶¶ 24, 146, 158).   This Court analyzes Plaintiff's Section 1595 claims under both the perpetrator and beneficiary theories.

*1.  Perpetrator Liability*

"Section 1595 incorporates § 1591's criminal liability elements, which include actual knowledge, as opposed to constructive knowledge." *Doe v. Best W. Int'l, Inc.*, No. 2:23-CV-3459, 2024 WL 3759761, at *6 (S.D. Ohio Aug. 12, 2024).  As set forth above, § 1591(a)(1) "imposes criminal sanctions on 'whoever knowingly' 'recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person' " with knowledge or reckless disregard of the fact that " 'means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act.'" *See Doe v. Best W. Int'l*, 2024 WL 3759761, at *6 (citation omitted). As a result, to satisfy § 1591(a)(1) in this context, "plaintiffs must allege defendants knowingly harbored or maintained a person 'with knowledge [or reckless disregard of the fact] that fraud or force would be used to cause her to engage in a commercial sex act.'" *Id.*

To allege a violation of § 1591(a)(2), Plaintiff must allege that Defendant "benefit[ted], financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1)," and that Defendant also knowingly or recklessly disregarded the fact that threats of force or coercion would be used to cause her to engage in a commercial sex act. *Id.*  Under § 1591, "participation in a venture" requires "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)." § 1591(e)(4). This Court has noted that to be liable under § 1591(a)(2), a defendant must be aware of the venture's "true ends" and commit an "overt act" in furtherance "of the sex trafficking aspect of the venture." *M.A.*, 425 F. Supp. 3d at 969-70.

Defendants argue that Plaintiff does not allege any facts demonstrating that Defendants knew she was being trafficked, that she was forced, threatened, or coerced, or that Defendants

recklessly disregarded any such coercion. (*See* ECF No. 17 at 6–7; ECF No. 18 at 5–14). Furthermore, they argue that renting a room does not qualify as "harboring" or "maintaining" under § 1591(a)(1) or as an "overt act" in furtherance of sex trafficking, as required by § 1591(a)(2). (*See* ECF No. 17 at 6–7; ECF No. 18 at 6–14).

With respect to § 1591(a)(1), this Court concludes that Plaintiff sufficiently alleges that "Defendants knowingly harbored or maintained her by alleging that Defendants continued to rent rooms to her trafficker while accepting payments to keep quiet and allow the trafficking the continue." *See Doe v. Best W. Int'l*, 2024 WL 3759761, at *6. She alleges that, to make sure "that the police were never called, M.S.'s trafficker paid staff at the Fresno Rodeway Inn to keep quiet" (*id.* ¶ 65); and, further, that her trafficker would "pay the Super 8 Fresno hotel staff twice the daily rate" (*Id.* ¶ 73). She also alleges that hotel staff at the Super 8 "would purposely place M.S. and her trafficker" in a corner room. (*Id.* ¶ 77). According to Plaintiff, "M.S.'s trafficker was very violent with her" at both properties and "loud sounds of abuse and M.S.'s screams for help could often be heard from the room as she was beaten every day." (*Id.* ¶¶ 66, 74).

These allegations raise a reasonable inference that Choice and Wyndham knew, or at least recklessly disregarded, that the commercial sex activity was coercive. S*ee Doe v. Best W. Int'l*, 2024 WL 3759761, at *6 ("Plaintiff is entitled to the reasonable inference that Defendants knew, or at least recklessly disregarded, that the commercial sex activity was coercive, given the commonsense understanding that the relationship between a pimp and prostitute is so very often coercive. Such an inference is particularly reasonable given that Plaintiff alleges she was indeed coerced, through threats and threats of force.").

Defendants' arguments with respect to § 1591(a)(2) miss the mark as well. As this Court previously concluded, "Defendant's room rentals, coupled with its acceptance of cash bribes to

stay quiet, also constitute 'knowingly assisting, supporting, or facilitating a violation of subsection (a)(1),' § 1591(e)(4), such that it was participating in a venture with Plaintiff's trafficker." *Id.* Additionally, Plaintiff is entitled to the inference that, based on the circumstances, Defendants had knowledge of the venture's "true ends," and as explained earlier, Plaintiff plausibly alleges that Defendants at least recklessly disregarded that the relationship between Plaintiff and her trafficker was a coercive one. (*See* ECF No. 1 ¶¶ 65, 66, 73, 74, 77).

Accordingly, Plaintiff has sufficiently stated a claim that Defendants are directly, civilly liable under a perpetrator theory of the TVPRA,

### 2. *Beneficiary Liability*

Having concluded that Plaintiff sufficiently alleges that Defendants are liable under § 1595 as perpetrators, this Court turns to Plaintiff's claims that Defendants are liable as a beneficiary under § 1595. In order to survive dismissal under the "beneficiary" theory of § 1595(a), a plaintiff must plead the following: (1) the person or entity must "knowingly benefit[ ], financially or by receiving anything of value"; (2) from participating in a venture; (3) that the "person knew or should have known has engaged in an act in violation of this chapter." § 1595(a). "A plaintiff may satisfy these elements by showing that 'defendant's own acts, omissions, and state of mind establish each element.'" *See T.D.P.*, 725 F. Supp. 3d at 794 (S.D. Ohio 2024) (quoting *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1060 (D. Colo. 2021)).

### a. *"Knowing Benefit"*

The "knowing benefit" element merely requires that Defendants knowingly receive a financial benefit, not that Defendants have actual knowledge of an illicit venture. *A.C.*, 2020 WL 3256261, at *4. As this Court found in *M.A.*, "the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the § 1595(a) standard."

*M.A.*, 425 F. Supp. 3d at 965; *accord H.H. v. G6 Hosp., LLC*, No. 2:19-CV-755, 2019 WL 6682152, at *2 (S.D. Ohio Dec. 6, 2019); *see also J.L.*, 521 F. Supp. 3d at 1061 (concluding that allegations that a hotel defendant received a percentage of room revenue where trafficking occurred, was sufficient to meet the knowing benefit element under 18 U.S.C. § 1595(a)); *Gilbert v. U.S. Olympic Comm.*, 423 F. Supp. 3d 1112, 1137 (D. Colo. 2019) (finding that the forced labor provision of § 1589(b) does not "require[ ] the party to benefit from the [forced] labor or services for liability to attach"). Because Plaintiff alleges that Choice rented rooms to her traffickers and benefited financially from those rentals (ECF No. 1 ¶ 149), Plaintiff's allegations are enough to satisfy the element of "knowing benefit" under Section 1595(a).

### b. *"Participated in a venture"*

Plaintiff also alleges sufficient facts to demonstrate Defendants' conduct constituted "participation in venture" under § 1595(a). This Court has held that participation in a venture under § 1595 does not require actual knowledge of trafficking crimes but requires "at least a showing of a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement." *M.A.*, 425 F. Supp. 3d at 970 (citing *Jean-Charles*, 937 F. Supp. 2d at 288–89); *see also G.G. v. Salesforce.com, Inc.*, 76 F.4th 544 (7th Cir. 2023) (holding that "the relevant 'venture'" under Section 1595 need not be 'specifically a sex trafficking venture'" and can be a "'commercial venture[]' like running or expanding a business."); *Ricchio*, 853 F.3d at 555 (finding sufficient allegations that, among other things, the trafficker and hotel owner had prior dealings); *Doe S.W.*, 2020 WL 1244192, at *6–7 (finding allegations that defendant hotels repeatedly rented rooms to individuals they should have known were traffickers based on the totality of the circumstances, were sufficient to survive a Rule 12(b)(6) motion); *H.H.*, 2019 WL

6682152, at *4 (same); *A.C.*, 2020 WL 3256261, at *6 (same). Further, participation in a venture under § 1595 does not require an "overt act." *See e.g., J.L.*, 521 F. Supp. 3d at 1062; *E.S. v. Best W. Int'l Inc.*, 510 F. Supp. 3d 420, 427 (N.D. Tex. 2021); *M.A.*, 425 F. Supp. 3d at 968–69; *S.J.*, 473 F. Supp. 3d at 153–54; *Doe S.W.,* 2020 WL 1244192, *6; *J.C.* v. Choice Hotels Int'l, Inc., 2020 WL 3035794, at *1 n. 1 (N.D. Cal. June 5, 2020).

Plaintiff here alleges that Wyndham "owns, supervises, manages, control, and/or operates" the Super 8 Motel, in which Plaintiff was trafficked. (ECF No. 1 ¶ 27).  She further contends that Wyndham exerted this control over the property through myriad means including providing reservation platforms, providing training to employees, providing customer review platforms, and implementing standardized rules of operation.  (*See id*. ¶¶ 143–153).  Plaintiff alleges that Choice likewise exercised day-to-day control over Choice's Rodeway Inn and its other brand hotels through centralized corporate systems, training, policies, and brand standards. Choice implements and retains brand hotel control over, including control over the Fresno Rodeway Inn where M.S. was trafficked, as either direct subsidiaries or under the terms of its franchise agreements. (*See id*. ¶¶ 132–142).

As Plaintiff points out, these allegations are sufficient to show that Defendants were "involved in a business venture with the franchisee hotels, and both groups benefitted by renting rooms to traffickers despite having at least constructive knowledge of ongoing trafficking based on the totality of the circumstances." *See N.B. v. Red Roof Inns, Inc.*, No. 2:22-CV-3771, 2024 WL 1332386, at *5 (S.D. Ohio Mar. 28, 2024).

Resisting this conclusion, Wyndham argues that "a hotel brand franchisor (or, in this case, its current parent) is logically higher than for a claim against the franchisee that owned and operated the facility." (ECF No. 17 at 8–12). Choice similarly argues that its franchisee was an

intermediary between Choice and the trafficker such that Plaintiff cannot show "participation in a venture" under the TVPRA. (ECF No. 18 at 15).

First, this Court addresses whether a franchisor-franchisee relationship between Defendant and the hotel operators is too attenuated to support Plaintiff's claim. Defendants point to the Eleventh Circuit's decision, *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021), which this Court has analyzed several times before. *See e.g.*, *G.M. v. Choice Hotels Int'l, Inc.*, 725 F. Supp. 3d 766, 778–79 (S.D. Ohio 2024). In *Doe #1*, the complaint included allegations that: (1) defendants licensed their brand to franchisees who paid royalties to the defendants and other fees based on a percentage of their room revenue; (2) defendants received a percentage of the revenue generated from the rooms in which trafficking occurred; (3) defendants "owned, managed, supervised, operated, oversaw, controlled the operation of, and/or were inextricably connected to the renting of rooms" at these hotels; (4) defendant franchisors investigated incidents of trafficking at the individual hotels and controlled training related to spotting trafficking; and (5) read online reviews mentioning prostitution and crime occurring generally at the hotels where plaintiffs were trafficked. *Doe #1*, 21 F.4th at 726. On these facts—admittedly similar to the ones *sub judice*—the Eleventh Circuit concluded that plaintiffs failed to allege that "the franchisors participated in a common undertaking involving risk or profit that violated the TVPRA." *Id.* at 726–27.

But "[k]ey to the court's reasoning" in *Doe #1* "was how the plaintiffs had chosen to define the alleged venture—specifically as a 'sex trafficking' venture." *G.G.*, 76 F.4th at 561-62 (emphasis added). Here, Plaintiff's allegations support an inference that Defendants were engaged in commercial business ventures at the property where Plaintiff was trafficked, in addition to the sex-trafficking ventures themselves. (*See* ECF No. 1 ¶. ¶ 151 ("Each Defendant participated in a

venture together and with, among others, M.S.'s traffickers."). This critical distinction limits *Doe #1*'s relevance here. See G.G., 76 F.4th at 562.

In a similar vein, Defendants' argument that they cannot be liable for participating in ordinary business dealings is unavailing. As explained above, the alleged venture "need not be 'specifically a sex trafficking venture.'" *G.G.*, 76 F.4th at 554. Instead, it can "be a business whose primary focus is not on sex trafficking." *Id*. In *G.G.*, for example, plaintiffs alleged that the defendant, Salesforce, provided advice and software to Backpage, a now-defunct website that hosted advertisements posted by the minor plaintiff's street-level trafficker. *Id.* at 548. The Seventh Circuit concluded that the venture there "was Backpage's business itself, including the 'growth,' 'expansion,' and profitability of that business." *Id.* at 554. Salesforce's relationship with Backpage certainly fell within the ambit of its ordinary business dealings, much like Defendants'.

Defendants' arguments that inaction or failure to prevent is insufficient to plead participation in a venture is similarly unpersuasive. (*See* ECF No. 17 at 11; ECF No. 18 at 16). Plaintiff here does not allege mere observation coupled with a failure to intervene. This is not an attempt at bystander liability. Instead, she alleges that the Choice breached "a statutory obligation not to benefit financially or receive anything of value from a venture that they knew, or should have known, engaged in violating the TVPRA." (ECF No. 1 ¶ 148). Plaintiff further alleges that Defendants: (1) profited from the rooms her traffickers rented and failed to implement trafficking prevention training programs; (2) collected room reservation, identification, payment, and sex trafficking website data from the trafficker's use of hotel Wi-Fi; and (3) had expansive control over hotel operator policies and operations but did not use that power to hold the franchisees accountable. (*Id*. ¶¶ 108–114; 132–153). This Court finds that Plaintiff's allegations that Defendant profited, failed to implement policies, and maintained expansive control over the hotel

operation standards meet § 1595's definition of "participation" in a venture. *See T.D.P.*, 725 F. Supp. 3d at 797.

In sum, Plaintiff has plausibly alleged that "Defendant was involved in a business venture with the hotel operators, and both groups benefitted by renting rooms to traffickers despite having at least constructive knowledge of ongoing trafficking based on the totality of the circumstances." *G.M.*, 725 F. Supp. 3d at 779.

### c. *"Knew or should have known" that the venture violated the TVPRA*

A defendant cannot be liable under 18 U.S.C. § 1595(a) unless it "knew or should have known" that the venture was engaged in sex trafficking. Choice and WHR need not have actual knowledge of trafficking crimes for liability to attach, as the language of § 1595(a) demonstrates that constructive knowledge is sufficient. *M.A.*, 425 F. Supp. 3d at 970 (citing *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 288–89 (D. Conn. 2013)).

Defendants argue that Plaintiff's allegations about what hotel operators may have observed is insufficient to establish franchisors' knowledge of Plaintiff's trafficking. (ECF No. 17 at 12; ECF No. 18 at 17). Plaintiff responds: (1) that there were signs of Plaintiff's trafficking that ought to have been obvious to hotel staff; and (2) that Defendant and the hospitality industry more broadly, have long been aware of the prevalence of human trafficking at their properties; but (3) failed to take action regarding human trafficking. (*See* ECF No. 25 at 31–33; ECF No. 1 ¶¶ 74, 82, 101–104).

Specifically, Plaintiff alleges that "there was constant foot traffic in and out of M.S.'s room" at the properties and that hotel staff witnessed "johns" who were "significantly older than M.S. . . . come into the main entrance and to M.S.'s room." (*Id.* ¶¶ 62–63, 72). According to Plaintiff, on one occasion at the Choice property, she was robbed while waiting for a "john" and ran outside

after the perpetrator, passing the front desk staff and "even asked them for security camera recordings of the incident or for the perpetrator's information, but they refused to help her in any way." (*Id.* ¶ 64). Additionally, Plaintiff alleges that, to make sure "that the police were never called, M.S.'s trafficker paid staff at the Fresno Rodeway Inn to keep quiet" (*Id.* ¶ 65); and that her trafficker would similarly "pay the Super 8 Fresno hotel staff twice the daily rate" (*Id.* ¶ 73).

Plaintiff also alleges that "loud sounds of abuse and M.S.'s screams for help could often be heard from the room as she was beaten every day." (*Id.* ¶¶ 66, 74). She further notes that each stay at the Defendants' motels raised "several consistent red flags," that should have been obvious to staff "including, but not limited to: Paying for stays in cash; Paying for extended stays on a day-by-day basis; Requesting a room away from other guests; Unusually large number of used condoms in the trash; Unusually large number of male visitors coming in and out of the room." (*Id.* ¶¶ 67, 75). According to M.S., hotel staff at Defendants' properties would have recognized "that M.S. was a child[] and seen the signs of her deterioration brought on by the abuse perpetrated by her trafficker, including bruising and physical and verbal abuse occurring in public areas of Defendants' properties as well as signs of malnutrition and poor health." (*Id.* ¶ 58).

This Court has previously held that notice of "the prevalence of sex trafficking generally at their hotels," the failure "to take adequate steps to train staff in order to prevent its occurrence," and signs that "should have alerted staff to [Plaintiff's] situation" are sufficient to meet the constructive knowledge requirement. *M.A.*, 425 F. Supp. 3d at 968; *G.M.,* 725 F. Supp. 3d at 780. Seeing similar allegations in the case at hand, this Court reaches the same conclusion.

This Court is guided in its analysis by two cases that establish the spectrum on which civil liability under the TVPRA can be found. In *Ricchio v. McLean*, the plaintiff alleged that the hotel owner and the trafficker were working together in a sex trafficking scheme evidenced by a "high-

five" while discussing "getting this thing going again," a past business relationship between the two, and allegations that one of the hotel owners had gone to the victim's room and "had shown indifference to [plaintiff's] obvious physical deterioration." *Ricchio*, 853 F. 3d at 555. Plaintiff alleged that while "in plain daylight view of the front office of the motel," her trafficker "kick[ed] her and force[d] her back toward the rented quarters when she had tried to escape." *Id.* The First Circuit concluded that the defendants "acted, at least, in reckless disregard" of the nature of the venture and held that the plaintiff had sufficiently alleged cognizable claims under § 1595. *Id*. at 557.

Conversely, in *Lawson v. Rubin*, plaintiffs sued Blue Icarus, the owner of a condo that it leased to Howard Rubin who was procuring women who he then sexually assaulted and abused at that location. No. 1:17-cv-6404 (BMC), 2018 WL 2012869, at *2 (E.D.N.Y. Apr. 29, 2018). The court found the plaintiff's allegations of one police visit after a fight ensued and one ambulance sent to the residence in six years insufficient to hold Blue Icarus liable under § 1595. The Court reasoned that even if Blue Icarus had done further investigation following the incidents, it would not have uncovered any more information about the alleged trafficking. *Lawson*, 2018 WL 2012869, at *13–14.

Plaintiff's allegations fall somewhere in between *Ricchio* and *Lawson*. This Court has previously concluded that many aspects of Plaintiff's experience described above should have alerted staff to her trafficking, including excessive condoms, cash payments from her traffickers, and frequent male guests. *See M.A.*, 425 F. Supp. 3d at 967; *see also G.M.*, 725 F. Supp. 3d at 780.

With respect to Choice as franchisor, Plaintiff's allegations are sufficient to pass muster under the plausibility standard of a 12(b)(6) motion to dismiss because she alleges that the franchisor itself had constructive knowledge of the problem. In comparable environments, courts

have found failure to implement policies sufficient to combat a known problem in one's operations constitutes willful blindness or negligence. *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 758–79 (1998) (holding where a "supervisor's sexual harassment is outside the scope of employment because the conduct was for personal motives," an employer can still "be liable ... where its own negligence is a cause of the harassment" because it "knew or should have known about the conduct and failed to stop it"); *Brown v. Corr. Corp. of Am.*, 603 F. Supp. 2d 73, 81 (D.D.C. 2009) (finding that complaint stated sufficient allegations under § 1983, based on willful blindness, where defendants knew that a supervisor at a correctional facility raped his employee, sexual harassment at the facility "was not an isolated incident," and defendants failed "to implement and effectuate the appropriate policies ... to remedy and/or prevent the discriminatory conduct, sexual abuse and sexual harassment and rape").

Defendants contend that they must have had knowledge or constructive knowledge with respect to Plaintiff specifically and that a generalized awareness of sex trafficking in its low-cost hotels is insufficient. "But the express terms of the statute impose liability for benefiting from a venture that the Defendant knew or should have known was engaged in violations of § 1591, not violations of § 1591 with respect to a particular person. § 1595." *G.M.*, 725 F. Supp. 3d at 781.

As this Court previously found, the "facts specific to Plaintiff's own sex trafficking, in combination with her allegations that Defendant was on notice about the prevalence of sex trafficking at its hotels yet continued to rent rooms to traffickers and failed to take adequate steps to train staff in order to prevent its occurrence, together support a conclusion that Defendant had constructive knowledge of the trafficking occurring at their hotels because they 'should have known' about the nature of the venture under the beneficiary theory's negligence standard. § 1595." *See T.D.P.*, 725 F. Supp. 3d at 799 (reaching same conclusion). Therefore, this Court finds that

Plaintiff's allegations are sufficient to meet the negligence standard in § 1595 for purposes of surviving Defendants' Motions to Dismiss.[1]

Because Plaintiff's allegations meet the three-pronged requirement of 18 U.S.C. § 1595, Plaintiff has sufficiently stated a claim that Choice and WHR are directly, civilly liable under the TVPRA. *See M.A.*, 425 F. Supp. 3d at 971–72 (denying motion to dismiss of hotel parent company defendants where plaintiff pled that defendants controlled employee training, room pricing, provided online booking platform, and conducted inspections); *T.D.P.*, 725 F. Supp. 3d at 797–99 (same).

### D. Vicarious Liability

A plaintiff can also satisfy the elements of § 1595's beneficiary theory by imputing "to the defendant the acts, omissions, and state of mind of an agent of the defendant" through indirect or vicarious liability. *J.L.*, 521 F. Supp. 3d at 1060. The TVPRA, however, does not address the issue of indirect or vicarious liability; therefore, federal district courts that have adjudicated this issue apply common law to fill in the gaps. *See T.D.P.*, 725 F. Supp. 3d at 799 (citing cases). This Court has applied federal common law when considering vicarious liability allegations under the TVPRA. *Id.* at 799–800 ("[T]his Court will proceed under a federal common law analysis of the issue. This approach brings the analysis in line with the Sixth Circuit's approach to applying the federal common law of vicarious liability to federal statutes that do not expressly provide direction on vicarious liability arguments."). Here, Defendants argue that Plaintiff fails to plead properly vicarious liability under the TVPRA pursuant to agency and joint employer theories of liability.

#### 1. Agency

---

[1] WHR also argues that there is no joint and several liability. (*See* ECF No. 17 at 20). But "[g]iven that no Defendant has even been found liable in this case, it would be premature to preclude joint and several liability at this juncture." *Doe v. Best W. Int'l*, 2024 WL 3759761, at * 7.

The Sixth Circuit relies on the Restatement of Agency when applying the federal common law of vicarious liability. *Johansen v. HomeAdvisor, Inc.*, 218 F.Supp.3d 577, 586 (S.D. Ohio 2016). Agency is most commonly defined as the "fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006). A defining element of agency "is the principal's right to control the agent's actions" such as "[t]he power to give interim instructions." *Id*. at cmt. f (1); *see also Savanna Group, Inc. v. Trynex, Inc.*, No. 10-C-7995, 2013 WL 4734004, at *5 (N.D. Ill. Sept. 3, 2012) (explaining that "[t]he power to give interim instruction" is an element that "distinguishes principals in agency relationship from those who contract to receive services provided by persons who are not agents."). As a result of that power, "[a] master is subject to liability for the torts of his servants committed while acting in the scope of their employment." *Burlington Indus. Inc.*, 524 U.S. at 755–56 (1998) (quoting Restatement (Second) of Agency § 219(1) (1957)).

While the mere existence of a franchise does not establish an agency relationship, the franchise model also does not preclude wholesale franchisors from vicarious liability under an agency theory. *Bricker v. R & A Pizza, Inc.*, 804 F.Supp.2d 615, 623 (S.D. Ohio 2011) ("[T]he existence of a franchisor-franchisee relationship between persons does not in itself preclude the existence of a principal-agent relationship between them."). To determine whether "a principal-agent relationship exists, courts consider the same factors 'as in the absence of a franchisor-franchisee relationship.'" *Id*. (citing *Taylor v. Checkrite, Ltd.*, 627 F. Supp. 415, 416 (S.D. Ohio 1986)). To succeed under an agency theory, Plaintiff must show both: (1) that Defendants and their

franchisees were in an agency relationship; and (2) that hotels or hotel staff are plausibly liable under § 1595(a).

Plaintiff alleges that Defendant exercised day-to-day control over the franchise properties at issue here. (ECF No. 1 ¶¶ 132–52). Plaintiff argues that this includes requiring franchisees to, among other things: (1) use Defendants' property management system; (2) use Defendants' centralized reservation system; (3) submit to periodic inspections with threat of termination; (4) gather reservation, payment, and occupancy data through Defendants' centralized system; (5) use approved Wi-Fi and security vendors; (6) comply with Defendants' regulated room rental rates; (7) share profits; and (8) adhere to other brand standards and corporate policies with respect to ethics and safety. (*Id.*). "These allegations are sufficient to meet the pleading standards of Federal Rule of Civil Procedure 8 to demonstrate Defendant's control over the franchisee properties for purposes of an agency relationship and vicarious liability." *G.M.*, 725 F. Supp. 3d at 783.

And Plaintiff alleges that the hotel franchisees themselves committed a wrong that can be imputed on Defendants. *See J.L. v. Best W. Int'l Inc.*, 521 F. Supp. 3d 1048, 1064-65 (D. Colo. 2021). This Court applies the three-pronged test established by 18 U.S.C. § 1595—and already used to assess Defendant's direct liability—to the hotel franchisees as well: (1) the person or entity must "knowingly benefit[ ], financially or by receiving anything of value"; (2) from participating in a venture; (3) that the "person knew or should have known has engaged in an act in violation of this chapter." § 1595(a).

First, Plaintiff alleges that the franchisees rented rooms to traffickers and financially benefited from their trafficking ventures, therefore satisfying the first prong. (ECF No. 1 ¶ 107). Second, Plaintiff has alleged sufficient facts—that franchisee hotels, along with Defendants, benefited financially from renting rooms to traffickers and should have known trafficking was

going on based on the totality of the circumstances—to meet § 1595's definition of "participation in a venture" in a commercial setting that profited from Plaintiff's sex trafficking. (*Id*.). Plaintiff alleges sufficient facts to demonstrate that employees at the hotel had constructive knowledge that she was being trafficked; specifically, that staff would have seen many red flags pointing toward trafficking and signs of Plaintiff's physical deterioration and abuse. (*Id*. ¶¶ 58, 110). Therefore, the beneficiary theory is satisfied with respect to Defendants' franchisees.

### 2. *Joint Employer Liability*

Defendants also argue that Plaintiff fails to state a vicarious liability claim under a joint employer theory. Much like agency theory, whether two employers are a joint employer also often turns on how much control one exercises over the other. *See e.g.*, *Int'l Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk Southern Corp.*, 927 F.2d 900, 902 (6th Cir. 1991) (articulating test for joint employer status under the NLRA as "the interrelation of operations between the companies, common management, centralized control of labor relations, and common ownership."); *Sanford v. Main Street Baptist Church Manor, Inc.*, 327 Fed. App'x 587, 594 (6th Cir. 2009) (adopting the following test for Title VII joint employer status: "(1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work; (2) the kind of occupation and nature of skill required, including whether skills are obtained in the work place; (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations; (4) method and form of payment and benefits; and (5) length of job commitment and/or expectations.").

While the factors this Court must consider when analyzing both agency and joint employer theories of vicarious liability are very similar, important among those to establish a joint employer theory of vicarious liability is the control exercised by the franchisor specific to employment

policies. *A.M. v. Wyndham Hotels & Resorts, Inc.*, 728 F. Supp. 3d 787, 804–05 (S.D. Ohio 2024) (quoting *B.D.G. v. Choice Hotels Intern., Inc.*, No. 2:22–zcv–3202, 2023 WL 5935646, at *10 (S.D. Ohio Sep. 12, 2023)).

Here, Plaintiff alleges that Defendants "promulgate[d] policies, procedures, and standards governing the hiring, training, retention, and advancement of on-the-ground employees and setting their rates of pay, which together exert significant control over all employment decisions made at the individual hotel locations at which Plaintiff was trafficked." (ECF No. 1 ¶ 124). These allegations are sufficient to meet the requirements to plead joint employment. *See A.M. v. Wyndham Hotels & Resorts, Inc.*, 728 F. Supp. 3d 787, 805 (S.D. Ohio 2024) ("[B]ecause Plaintiff alleges that Defendant posts all hotel jobs on its website, controls employee training, and provides employee benefits, she has sufficiently pleaded a joint employer theory against Wyndham.").

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss (ECF Nos. 17, 18) are **DENIED.**

**IT IS SO ORDERED**.

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 30, 2025**